Mar. 22, 1876. } EMERSON *v.* SHAW.

*Proof of marriage by cohabitation.*

On the trial of an action to recover damage for loss of service and expense occasioned to the plaintiff by an assault made by the defendant upon A B, who was alleged to be the plaintiff's wife—*Held*, that evidence that A B was, at the time of the assault, the lawful wife of another man was properly received, and showed a bar to the action.

FROM MERRIMACK CIRCUIT COURT.

ACTION, to recover damages by reason of the loss of service and expense occasioned to the plaintiff on account of an assault made upon the plaintiff's wife by the defendant.

Under the act of 1874, this action was referred, and at this term the referee reported the following facts proved before him:

Some time in the month of May, 1867, the plaintiff went through

the form of a marriage with Elvira Emerson, named \ declaration as his wife, before a properly authorized pe to constitute them husband and wife had both of them been contract that relation; that such form of marriage was fo cohabitation of the parties, and an acknowledgment of each husband and wife, and a reputation to some extent that such re existed between them up to the time of the hearing. Evidence offered on the part of the defendant tending to show that the said Elvira Emerson was at said time, and ever since has been, incapable of contracting said relation with the plaintiff, by reason of her then, and ever since, and now, having a legal husband, one George W. Pillsbury. The plaintiff objected to the introduction of this evidence; but .the referee overruled the objection, and finds that, on September 30, 1854, said Elvira Emerson was lawfully married to one George W. Pillsbury, who was her legal husband at the time of her said form of marriage with the plaintiff, and also at the time the cause of this action is alleged to have occurred, and is such at the time of this hearing. The defendant then moved for a nonsuit; but the referee *pro forma* denied the motion,—and, if the court hold that this action can be maintained on the foregoing statement of facts, he finds the defendant guilty in manner and form as is alleged against him in the plaintiff's declaration, and assesses the damages in the sum of fifteen dollars, and costs of reference taxed at ten dollars and fifty cents, and costs of court to be taxed by the court: otherwise, he finds for the defendant in the sum of seventy-five cents, costs of reference and costs of court to be taxed by the court.

At this term the defendant moved for judgment in his favor, which motion the court granted, and the plaintiff excepted.

The questions of law thereupon arising were transferred to this court for determination by STANLEY, J.

*Barnard,* for the plaintiff.

*Pike & Blodgett,* for the defendant.

LADD, J. The construction of Gen. Stats., ch. 161, secs. 16, 17, contended for by the plaintiff, would assuredly be, as the defendant says, to legalize bigamy. This extraordinary consequence is avoided, if we understand that the acts have reference only to such persons as are competent to contract matrimony together; and that this must be so is quite too plain for argument. A contrary view would be no less absurd than to hold that when the legislature point out the mode in which any other contract may be entered into, and the evidence by which it must be sustained (as, for example, in case of the statutes of frauds), they thereby remove all disqualifications, such as infancy, coverture, and the like, and empower all persons to bind themselves by such contracts as they may enter into with the formalities prescribed. These acts were, beyond question, intended for those who might legally

d and wife, and not to encourage and protect adultery
t a mode in which an existing matrimonial tie might be
the option of the parties, and another equally yielding
rary be substituted in its place.

evidence entirely fails to support the declaration. The fault
ot matter of abatement, and there should be judgment on the
rt for the defendant.

CUSHING C. J. This case cannot be controlled by sec. 16, ch. 161, Gen. Stats., because that section requires that the cohabitation should have continued until the decease of one of the parties. It might be that, after the decease of one of the parties, the policy of the law would not deem it necessary to inflict upon other innocent persons—as, for instance, the children of such a marriage—the unfortunate consequences—as, for instance, illegitimacy—of their parents' transgression, but would deem persons so cohabiting to have been legally married, *i. e.*, treat the survivor and the children as if there had been a legal marriage. It may be that the policy of the law would not deprive children of the inheritance of their father's property in favor of collateral, perhaps remote, heirs. There is no pretence for applying the statute here, because neither party is dead.

By section 17, the evidence mentioned in that section is made competent, but not conclusive ; and it may therefore be, as in the present case, rebutted.

SMITH, J. The plaintiff seeks to recover damages for the loss of service and expense occasioned by an assault upon his wife by the defendant. The evidence shows that the marriage ceremony was performed in May, 1867, and that they have lived together as husband and wife since that time, acknowledging each other as such, and being generally reputed as such ; but the evidence also shows that Mrs. Emerson had been previously married to one Pillsbury, who is still alive, and from whom she has never been divorced. Her subsequent marriage with Emerson was, therefore, absolutely null and void—2 Kent Com. 79; and it plainly follows that he cannot maintain this action. The relation of husband and wife, which is so essential in order to maintain this action, does not exist. It is true, that the statutes make acknowledgment, cohabitation, and reputation evidence of marriage ; but there is no ground for arguing that such evidence is conclusive. It is evidence to be received, but subject to be explained and rebutted, as any other evidence is. To parties capable of contracting marriage, it affords an opportunity to supply proof of marriage when the witnesses of the marriage ceremony may be dead or unknown ; but to hold that evidence that either party had been previously married, and that the marriage had never been dissolved, cannot be received, would be lending the assistance of the law to conceal the crime of bigamy. To adopt the language of the defendant's counsel,—" The statute does not authorize bigamy, nor offer a premium and cloak to adultery by way of estoppel."

*Exceptions overruled.*